UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CECILIO GONZALEZ-LEON (A-024-456-566),

Petitioner,

v.

CHRISTOPHER CHESTNUT, et al,

Respondents.

No.  1:26-cv-03984-TLN-CSK

ORDER AND FINDINGS & RECOMMENDATIONS

Petitioner Cecilio Gonzalez-Leon (A-024-456-566), a native and citizen of Cuba who is proceeding without counsel, filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  On May 14, 1980, petitioner entered the United States as a Cuban/Haitian Entrant.  On February 4, 1992, an immigration judge ordered him removed.  He was detained by immigration officials at different times.  Most recently, petitioner was released on an Order of Supervision dated April 17, 2014.  On February 2, 2026, U.S. Immigration and Customs Enforcement ("ICE") officials served petitioner with a Notice of Revocation of Release and re-detained him the same day.  This habeas action concerns petitioner's re-detention.  For the reasons that follow, the Court recommends that the petition for writ of habeas corpus be granted

_____

[1]  Petitioner is proceeding in forma pauperis.  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

in part and denied in part.

I.     **FACTUAL BACKGROUND**

On May 14, 1980, petitioner first entered the United States as a Cuban/Haitian Entrant. (ECF No. 9-2 at 2.)  On December 11, 1991, immigration authorities served him with an Order to Show Cause, placing him into deportation proceedings and charging him under former Immigration and Nationality Act ("INA") § 241(a)(2)(B)(i), current 8 U.S.C. § 1227(a)(2)(B)(i), as a noncitizen convicted of a violation of a law relating to a controlled substance.  (Id.; ECF No. 9-1.)  On February 4, 1992, an immigration judge ordered him removed in absentia.  (ECF No. 9-1.)  Petitioner did not file an appeal to the Board of Immigration Appeals, and the record lacks any evidence he filed a motion to reopen.  (ECF No. 9-2 at 3.)  Petitioner asserts he was detained after his removal order until approximately November 1996.  (ECF No. 1 at 3.)  The Form I-213 dated February 2, 2026 reflects that on January 9, 1997 he was released on an Order of Supervision.[2]  (ECF No. 9-2 at 3.)

Petitioner left the United States on an unknown date, and on November 7, 2012, he re-entered the United States as a Cuban/Haitian parolee.  (Id. at 1.)  ICE most recently placed petitioner on an Order of Supervision on April 14, 2014.  (Id. at 3; ECF No. 9-3.)  The Order of Supervision states that because DHS had not effected petitioner's deportation or removal during the time prescribed by law, petitioner was ordered placed under supervision and permitted to be at large under several conditions.  (ECF No. 9-3 at 1.)

Petitioner has a lengthy criminal history and has been arrested and convicted by local authorities on multiple occasions for different charges.  (ECF No. 9-2 at 3-4.)  On February 2, 2026, ICE officials served petitioner with a Notice of Revocation of Release and took him into custody.  (ECF No. 9-4 at 1.)  The Notice of Revocation of Release states that his release was revoked because he violated a condition of his release as he was convicted of assault with a

---

[2]  This appears inconsistent with petitioner's assertion that he was released in "approximately November of 1996."  (ECF No. 1 at 3.)  There are no other documents in the record addressing when petitioner was initially detained and/or released from ICE custody.  Because the Court need not resolve this factual inconsistency in its determination of the merits of petitioner's claims, the Court declines to do so.

deadly weapon in violation of California Penal Code § 245(a)(1) on January 9, 2020; and because circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future.  (ECF No. 9-4 at 1-2.)

## II.    PROCEDURAL BACKGROUND

On May 26, 2026, petitioner filed his petition for writ of habeas corpus, a motion to proceed in forma pauperis, and a motion to appoint counsel.  (ECF Nos. 1-3.)  On May 27, 2026, the district judge referred the matter to the assigned magistrate judge for all further proceedings.  (ECF No. 6.)  On June 4, 2026, respondents timely filed an answer to the petition or a motion to dismiss.  (ECF No. 9.)  On June 22, 2026, petitioner filed a timely reply/traverse.  (ECF No. 10.)  Briefing is now complete.

## III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV.    DISCUSSION

Petitioner challenges his continued detention based on the violation of the following: (1) petitioner's continued detention violates the Fifth Amendment procedural due process clause; (2) third country removal policies violate the Fifth Amendment, 8 U.S.C. § 1231, the Convention Against Torture, Implementing Regulations and the Administrative Procedures Act; (3) punitive third country banishment violates the Eighth and Fifth Amendments; and (4) his re-detention without proper notice violates the Fifth Amendment due process clause, 8 C.F.R. § 241.13, and

the Administrative Procedures Act.  (ECF No. 1 at 13-19.)  Respondents argue that petitioner is subject to detention under 8 U.S.C. § 1231(a)(6) because he is subject to an administratively final order of removal.  (ECF No. 9 at 1.)  Respondents further argue his detention is presumptively reasonable as he has most recently been detained for less than six months and has not provided evidence to rebut the presumption of reasonability.  (Id. at 2.)

> **A.**    **Claims One and Four: Post-Final Order Detention & Revocation of Release**

In claim one, petitioner argues that his continued re-detention violates his right to due process.  (ECF No. 1 at 13-14.)  In claim four, petitioner argues that his re-detention violates the Fifth Amendment, the Convention Against Torture, Implementing Regulations, and the Administrative Procedure Act.  (Id. at 17-18.)  Because these claims require examination of whether the government followed its own regulations that set out procedures in revoking release, procedures that protect important due process rights, the Court discusses these claims together. See Vu v. Noem, 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025); Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution").

Pursuant to 8 U.S.C. § 1231(a)(1), the Attorney General of the United States shall remove a noncitizen within 90 days, which is referred to as the "removal period."  8 U.S.C. § 1231(a)(1)(A).  The removal period begins on the latest of the following:  (i) the date the removal order becomes administratively final; (ii) if the removal order is judicially reviewed and a stay of removal is ordered, the date of the court's final order; or (iii) the date the noncitizen is released from detention or confinement.  8 U.S.C. § 1231(a)(1)(B).  During the removal period, the noncitizen shall be detained.  8 U.S.C. § 1231(a)(2).  If the noncitizen is not removed within the removal period, the noncitizen shall be released and subject to supervision with certain conditions.  8 U.S.C. § 1231(a)(3).  Here, it is clear that the 90-day removal period has long passed where petitioner was ordered removed in absentia on February 4, 1992, and the record lacks any indication he has filed a motion to reopen or attempted to challenge the decision before the Board of Immigration Appeals.  (ECF No. 9-1.)   It is also undisputed that petitioner was most recently released under an Order of Supervision dated April 17, 2014.   (ECF No. 9-3); see

4

8 C.F.R. §§ 241.4, 241.13.

Citing Zadvydas, respondents argue that six months is a presumptively reasonable amount of time to effect removal.  (ECF No. 9 at 2-3.)  Zadvydas dealt with a noncitizen who had been detained and never released following a final order of removal.  Zadvydas, 533 U.S. at 701.  In that context, the Supreme Court held that once a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing."  Id.

However, the burden-shifting framework from Zadvydas does not apply to petitioner's challenge to his re-detention.  As another district court noted in a similar context, "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in Zadvydas."  Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); see also Yan-Ling X. v. Lyons, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025).  As in Nguyen, "[t]his case is about ICE's authority to re-detain [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]."  Nguyen, 788 F. Supp. 3d at 149.  "[T]his is not your typical first round detainment of an alien awaiting removal.  Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired."  Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).  It is clear that petitioner has been detained well beyond the expiration of the 90-day removal period.

A set of regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed.  A noncitizen who has been released under an Order of Supervision "who violates any of the conditions of release may be returned to custody . . . and may be continued in detention for an additional six months in order to affect the alien's removal, if possible[.]"  8 C.F.R. § 241.13(i)(1).  A noncitizen's release may also be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).  As stated above, the Notice of Revocation of Release dated February 2,

2026 states that petitioner's release was revoked due to petitioner's violation of a condition of his release, in that he was convicted of assault with a deadly weapon in violation of California Penal Code § 2451(a)(1), and due to "changed circumstances" because ICE determined that petitioner could be "expeditiously removed from the United States." (ECF No. 9-4 at 1-2.) For the reasons that follow, the Court finds that ICE has failed to establish a change in circumstances and that ICE failed to follow its own regulations in revoking petitioner's release.[3]

### 1.   Changed Circumstances

The regulations at 8 C.F.R. § 241.13(i) apply to non-citizens in petitioner's situation. Those regulations indicate that when ICE revokes release to effectuate removal, "it is [ICE's] burden to show a significant likelihood that the alien may be removed." Escalante, 2025 WL 2206113, at *3; see also Roble v. Bondi, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future[.]"); Abuelhawa v. Noem, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."). As the district court in Escalante found, "[i]mposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications." Escalante, 2025 WL 2206113, at *3. Therefore, the Court must determine whether respondents have met their burden to show a changed circumstance indicating a significant likelihood of removal.

The only changed circumstance that respondents identify in petitioner's case is that DHS is currently seeking travel documents to facilitate petitioner's return to Cuba. (ECF No. 9-4 at 1-2.) Respondents fail to address why travel documents from Cuba were not previously obtained

---

[3]   This Court recognizes that petitioner appears to have a criminal history dating back to 1988, which includes a January 9, 2020 conviction for assault with a deadly weapon. (ECF No. 9-2 at 3-4). Because this Court finds that ICE has failed to establish changed circumstances and failed to follow its own regulations, the Court does not reach whether ICE lawfully revoked petitioner's Order of Supervision based on any violation of his conditions of release. The government may revoke petitioner's supervision and remove petitioner, but it must do so lawfully, following the requirements of the Constitution and its own regulations. It has failed to do so here.

years ago or why Cuba is likely to issue a travel document for petitioner in the reasonably foreseeable future. See Yan-Ling, 2025 WL 3123793, at *4 (citing Hoac v. Becerra, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around.").  Respondents do not explain whether removals to Cuba are common, do not identify what considerations the government of Cuba might take into account when deciding whether to issue a travel document, and do not explain whether the government of Cuba will look favorably on petitioner's case.  See Yan-Ling, 2025 WL 3123793, at *3 (citing Liu v. Carter, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (finding that the respondents had not shown that removal was reasonably foreseeable where they did not provide evidence why seeking travel documentation was more likely to be successful this time around or describe other actions taken to make the petitioner's removal more likely)).  The phrase "significant likelihood" requires something more than a mere possibility that removal will occur.  Evidence that "there is at least some possibility" that the designated country of removal "will accept Petitioner at some point…is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future." Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025).  In the instant case, petitioner's in absentia removal order became final on its issuance on February 4, 1992.  (ECF No. 9-1); 8 C.F.R. § 1241.1(e).  Respondents do not explain why ICE has been unable to remove petitioner for more than 29 years.  "An undue delay in removal for an individual alien beyond the typical removal period would naturally suggest that removal is unlikely." Chun Yat Ma v. Asher, 2012 WL 1432229, at *5 (W.D. Wash. Apr. 25, 2012).

Accordingly, this Court finds ICE failed to make a showing of changed circumstances to establish a significant likelihood of removal in the reasonably foreseeable future.

### 2.    Compliance with Implementing Regulations

"ICE, like any agency, 'has the duty to follow its own regulations.'" Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting Haoud v. Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003); see Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 130 (2d

Cir. 2020) ("Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations.").

This Court also observes that 8 C.F.R. § 241.13(i)(2) requires that the determination that changed circumstances will result in the noncitizen's removal in the reasonably foreseeable future is made *before* the removable noncitizen has had their release revoked. See Duong v. Charles, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025); Tran v. Noem, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025); Sphabmixay v. Noem, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 3, 2025). Here, the record does not show that a changed-circumstance determination was made at or before petitioner's re-detention on February 2, 2026. To the extent the changed circumstance could be based on travel documents requested after petitioner's re-detention, petitioner's re-detention violates § 241.13(i)(2) because a changed-circumstance determination was not made at or before petitioner' re-detention on February 2, 2026.

When revoking petitioner's release pursuant to § 241.13(i)(2) based on changed circumstances, the petitioner "must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition, as allowed under § 241.13(i)(3)." Sarail v. Bondi, 803 F. Supp. 3d 775, 787 (D. Minn. Sept. 3, 2025). By stating "changed circumstances" without any other information, the Notice of Removal did not give petitioner adequate notice of the changed circumstances.

Petitioner also claims that he did not receive a prompt informal interview following his re-detention. (ECF No. 1 at 18.) Section 241.13(i)(3) requires a prompt interview following re-detention: "Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." The Notice of Revocation also repeated these requirements regarding the prompt provision of an informal interview where

petitioner would "be given an opportunity to respond to the reasons for the revocation" and stated that an interview was scheduled for February 2, 2026. (ECF No. 9-2 at 2.) However, respondents do not contest petitioner's claim that he did not receive a prompt informal interview following his re-detention or provide evidence indicating an interview took place where he was provided the opportunity to respond to the reasons for revocation. (See ECF No. 9.)

The Court finds that respondents violated their own regulation, 8 C.F.R. § 241.13. Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Id. Respondents' failure to notify petitioner of the reasons for revocation beyond "changed circumstances" and failure to provide petitioner with a prompt interview following his re-detention violated 8 C.F.R. § 241.13(i)(3). Courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute ... and [ICE] fails to adhere to it, the challenged [action] is invalid.'" Rombot, 296 F. Supp. 3d at 388 (quoting Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir. 1993)); see also Truong v. Noem, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 6, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.") (collecting cases).

### 3.    Due Process

This Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). When the government grants a noncitizen parole or supervised release, it creates a protected liberty interest subject to due process clause protection. See Sanchez v. LaRose, 2025 WL 2770629, at *3 (S.D. Cal. Sept.

9

26, 2025).  These protections include at least notice and an opportunity to be heard regarding the revocation.  Id.; Mathews v. Eldridge, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it.'").  In Saengphet v. Noem, the district court ruled that notices revoking protected liberty interests are constitutionally inadequate when they lack individualized explanations of the changed circumstances giving rise to revocation.  See 815 F. Supp. 3d 1142, 1150 (S.D. Cal. Nov. 20, 2025).  Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient.  See Sanchez, 2025 WL 2770629, at *3; Ying Fong v. Ashcroft, 317 F. Supp. 2d 398, 403 (S.D.N.Y. 2004) ("The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner.") (internal citation omitted).  A detainee's opportunity to be heard is not meaningful if the detainee has not been informed of the circumstances of his revoked release in a manner sufficient to allow his response.  See Sarail A. v. Bondi, 803 F. Supp. 3d 775, 787 (D. Minn. Sept. 3, 2025).

While this Court recognizes that the government has an interest in enforcing immigration laws and in public safety, the government's interest in re-detaining petitioner without adequate notice and an opportunity to challenge the revocation of his release is low. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025).  "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).  Respondents identify no reason why adequate notice and an informal interview "to afford the alien an opportunity to respond to the reasons for revocation stated in the notification" were not provided to petitioner as required by their own regulations.  See 8 C.F.R. § 241.13(i)(3).

For the reasons above, this Court recommends that the petition be granted as to claims one and four alleging that petitioner's re-detention is unlawful because the government failed to demonstrate changed circumstances establishing a significant likelihood of petitioner's removal to Cuba in the reasonably foreseeable future, and because the government failed to comply with

10

its own regulations regarding the revocation of petitioner's release set forth at 8 C.F.R. § 241.13(i).

**B.      Claims Two and Three: Third Country Removal Claims**

In claim two, petitioner argues that third country removal policies violate the Fifth Amendment, 8 U.S.C. § 1231, the Convention Against Torture, Implementing Regulations and the Administrative Procedures Act.  (ECF No. 1 at 14-15.)  In claim three, petitioner argues that punitive third country banishment violates the Fifth and Eighth Amendments.  (Id. at 15-16.)  In the answer, respondents do not address petitioner's arguments regarding removal to a third country.  (ECF No. 9.)  For the following reasons, this Court finds that petitioner lacks standing to raise his claims challenging third country removal policies and procedures.

To establish Article III standing, a party must allege an injury that is "concrete and particularized," "actual or imminent," and likely to be "redressed by a favorable" judicial decision.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992).  The petition appears to be a form petition and the record before the Court does not indicate that third country removal is currently at issue.  (See ECF Nos. 1, 9, 10.)  Because nothing before the Court shows any basis for petitioner's third country removal claims, this Court finds that petitioner lacks standing to raise his third country removal claims at this time, and those claims should be denied.

**C.      Petitioner's Other Claims for Relief**

Because the Court recommends granting the petition based on claims one and four, the Court need not address any additional claims raised in the petition.  See N.K. v. Noem, No. 1:26-cv-0292 KES SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi, No. 3:25-cv-2405 RBM AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release").  Petitioner is entitled to the habeas relief he seeks based on the court's ruling as to claims one and four.

///

**D.      Remedy**

Based on the recommendation that the petition be granted as to claims one and four, this Court recommends that petitioner be immediately released to return him to the status quo before the pending controversy.  See Yang v. Kaiser, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante litem is "the last uncontested status which preceded the pending controversy").  Because petitioner challenges his current re-detention, the last uncontested status of petitioner was his release under the April 17, 2014 Order of Supervision before his re-detention on February 2, 2026.

**V.      MOTION FOR APPOINTMENT OF COUNSEL**

Petitioner filed a motion for appointment of counsel.  (ECF No. 2.)  There currently exists no absolute right to appointment of counsel in habeas proceedings.  See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996).  Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of the case "if the interests of justice so require."  See Rule 8(c), Fed. R. Governing § 2254 Cases.  Because the Court recommends the petition be granted and petitioner be released, the Court does not find the interests of justice require appointment of counsel at the present time. Petitioner's motion to appoint counsel is therefore denied without prejudice.

**VI.      CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for appointment of counsel (ECF No. 2) is DENIED WITHOUT PREJUDICE; and

Further, IT IS HEREBY RECOMMENDED that:

1.   The petition for writ of habeas corpus (ECF No. 1) be GRANTED as to claims one and four (due process and regulatory violation), and DENIED as to claims two and three (third country removal).

2.   Petitioner Cecilio Gonzalez-Leon (A-024-456-566) be immediately released from ICE custody under the same conditions he was previously released in his April 17, 2014 Order of Supervision.  If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.  Respondents be enjoined and

restrained from re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, compliance with the requirements of 8 C.F.R. § 241.13(i) for revocation of release, and any other applicable statutory and regulatory procedures. Because petitioner is proceeding pro se, respondents be further directed to file a status report within seven (7) days from the date of his release.

3.   The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 7, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/gonz3984.2241.imm/9

13